## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

**FINE TUNE BUSINESS CONSULTANTS, LLC**                                **PLAINTIFF**

vs.                                                         **CIVIL ACTION NO. 3:19-CV-907-CRS**

**CUSTOM ASSEMBLY, INC.**                                                **DEFENDANT**

### MEMORANDUM OPINION

### I.     Introduction

This matter is before the Court on Defendant Custom Assembly, Inc.'s ("Custom Assembly") motion to transfer venue from the Western District of Kentucky to the Northern District of Ohio. DN 4; DN 5. Plaintiff Fine Tune Business Consultants, LLC ("Fine Tune") responded and Custom Assembly replied. DN 12; DN 17. The matter is now ripe for adjudication. For the reasons stated herein, the Court will grant Custom Assembly's motion to transfer.

### II.    Factual Background and Procedural History

This case arises from a contract dispute. Fine Tune is an Indiana limited liability company with its principal place of business in Illinois. DN 12 at 11. Fine Tune alleges that it conducts business in Louisville, Kentucky. DN 1-1 at ¶ 2. Custom Assembly is an Ohio corporation with its principal place of business in Haviland, Ohio. DN 1 at ¶ 3. Fine Tune alleges that it entered into a Mutual Agreement with Custom Assembly to "negotiate and manage all of [Custom Assembly's] industrial laundering, facility services, corporate apparel and waste disposal costs, and costs related to those services." *Id.* at ¶ 6.

The alleged purpose of this agreement was for Fine Tune to provide cost saving measures for Custom Assembly. *Id.* According to Fine Tune, under the Mutual Agreement, "[i]f there is a reduction in [Custom Assembly's] billing or a credit for any past billing errors during the term of

1

the [Mutual] Agreement, [Custom Assembly] agreed to pay [Fine Tune] 50% of the gross savings resulting from any cost savings initiative and/or any newly implemented supplier contracts." *Id.* at ¶ 7. Further, clause six of the Mutual Agreement states "[Custom Assembly] acknowledges jurisdiction for this agreement shall be in Jefferson County, KY." DN 12 at 3.

Fine Tune alleges that Custom Assembly entered into a five-year contract for laundry services with a third-party vendor prior to entering the Mutual Agreement. *Id.* at ¶ 9. Since the laundry services agreement was set to expire, Fine Tune contends that it provided potential cost savings data to Custom Assembly for its next laundry services contract. *Id.* at ¶ 10. According to Fine Tune, Custom Assembly informed Fine Tune that it would not honor the Mutual Agreement, then used the cost savings data to obtain better pricing in its next laundry services contract. *Id.* at ¶ 11–15.

Fine Tune originally brought three claims against Custom Assembly in Jefferson County Circuit Court: (1) declaratory relief under KRS § 418.040, (2) accounting of service contracts, and (3) specific performance. *Id.* at ¶ 16–26. Custom Assembly removed the action to this Court based on diversity jurisdiction under 28 U.S.C. § 1332. DN 1. Custom Assembly subsequently filed a motion to transfer the case to the Northern District of Ohio. DN 4; DN 5.

**III.**   **Legal Standard**

Venue is generally proper "(1) in the judicial district where any defendant resides, so long as all defendants are residents of the district's state, (2) in the judicial district where a substantial part of the events giving rise to the claim occurred, or (3) if there are no such districts, in any judicial district where any defendant is subject to personal jurisdiction." 28 U.S.C. § 1391(b). For the purposes of this statute, a corporate or unincorporated association is deemed to reside in "any

2

judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A two-part test assists courts in determining when transfer is proper. *See Rutherford v. Goodyear Tire & Rubber Co.*, 943 F. Supp. 789, 791 (W.D. Ky. 1996). First, the Court must determine whether the action could have been brought originally in the transferee court. *Id*. Second, the Court must decide whether a change of venue would serve the interests of justice and facilitate the convenience of the parties and witnesses. *Id*.

"[I]n ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991). Although "district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate," *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009), courts within the Sixth Circuit have identified nine factors that should be considered in making this determination. These factors include:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*See Long John Silver's, Inc. v. Nickleson*, No. 3:11–CV–93–H, 2011 WL 5025347, at *4 (W.D. Ky. Oct. 21, 2011); *Cowden v. Parker & Associates, Inc*., No. 5:09–CV–0323–KKC, 2010 WL

715850, at *2 (E.D. Ky. Feb. 22, 2010*); Perceptron, Inc. v. Silicon Video, Inc.*, 423 F. Supp. 2d 722, 729 (E.D. Mich. 2006).

The moving party bears the burden of demonstrating that these factors weighs in favor of transfer. *Adams v. Honda Motor Co.*, No. 3:05–CV–120–S, 2005 WL 3236780, at *1 (W.D. Ky. Nov. 21, 2005). Although "the plaintiff's choice of forum should rarely be disturbed ... unless the balance [of convenience] is strongly in favor of the defendant," *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), the plaintiff's choice is by no means dispositive. *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 413 (6th Cir. 1998). Instead, the court's decision must be based on an "individualized, case-by-case consideration of convenience and fairness" that accords every relevant factor its due consideration and appropriate weight. *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

**IV.   Discussion**

Custom Assembly argues that (1) venue is improper in the Western District of Kentucky and the case should be transferred to the Northern District of Ohio, and (2), in the alternative, the Court should exercise its discretion to transfer this case to the Northern District of Ohio under § 1404(a). In response, Fine Tune argues that (1) venue is proper in the Western District of Kentucky, (2) the Court should enforce clause six of the Mutual Agreement as a forum-selection clause, and (3) the Court should not exercise its discretion to transfer the case under § 1404(a). The Court will address each argument.

### A.   Venue is Proper in the Western District of Kentucky

Custom Assembly argues that none of the factual circumstances described in § 1391(b) are met in the Western District of Kentucky and, therefore, venue is improper. DN. 5 at 3–4. Clause six of the Mutual Agreement states "[Custom Assembly] acknowledges jurisdiction for this

agreement shall be in Jefferson County, KY." DN 12 at 2. In its reply, Custom Assembly concedes that, "[c]lause 6 merely represents an agreement to personal jurisdiction within this county." DN 17 at 2. By conceding that clause six avails Custom Assembly to personal jurisdiction in Jefferson County, Custom Assembly is subsequently deemed to reside in Jefferson County under § 1391(c)(2). Venue is, therefore, proper under § 1391(b)(1) because Custom Assembly resides in the Western District of Kentucky. Accordingly, Custom Assembly's argument is without merit.

### B. Clause Six of the Mutual Agreement

In response to Custom Assembly's motion to transfer, Fine Tune argues that (1) clause six of the Mutual Agreement is a forum-selection clause, and (2) the Court should enforce the forum-selection clause and keep the case in the Western District of Kentucky. DN 12 at 8–10. Custom Assembly argues that clause six is not a forum-selection clause and, therefore, "does not provide any support for Fine Tune's argument against Custom Assembly's motion to transfer." DN 17 at 3. In a diversity suit, federal law governs whether a forum-selection clause is enforceable. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). "The presence of a forum-selection clause…will be a significant factor that figures centrally in the district court's calculus" in evaluating a motion to transfer venue under § 1404(a). *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). While a forum-selection clause should be upheld absent a strong showing that it should be set aside, *Wong*, 589 F.3d at 828, the Court must analyze the clause within the context of "[t]he flexible and individualized analysis Congress prescribed in § 1404(a)." *Stewart Org.*, 487 U.S. at 29–30.

Generally, the Court must evaluate three factors to determine the enforceability of a forum-selection clause: (1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3)

5

whether the designated forum would be so seriously inconvenient that requiring the plaintiff to bring suit there would be unjust. *Wong*, 589 F.3d at 828. But, contrary to Fine Tune's assertion, there is no enforceable forum-selection clause for the Court to evaluate in this case. Clause six of the Mutual Agreement provides "[Custom Assembly] acknowledges jurisdiction for this agreement shall be in Jefferson County, KY." DN 12 at 3. At most, the plain meaning of this clause provides that Custom Assembly is subject to jurisdiction, generally, in Jefferson County. The clause does not dictate in which state, or which court, disputes arising from the Mutual Agreement must be brought. *See Streeter v. Adaptasoft, Inc.*, No. 2-17-CV-01125, 2018 WL 4030546, at *5 (S.D. Ohio Aug. 23, 2018). To hold that this clause is a valid and enforceable forum-selection clause would go well beyond its plain, unambiguous, language. Accordingly, in evaluating whether to transfer this case under § 1404(a), the Court need not consider whether to enforce clause six as a forum-selection clause in conjunction with the other particularized factors.

### C. Custom Assembly's Request to Transfer to the Northern District of Ohio

Custom Assembly argues that the Court should exercise its discretion to transfer the case to the Northern District of Ohio under § 1404(a). The first element the Court must consider before transferring a case under § 1401(a) is whether the plaintiff could have brought the case originally in the transferee court. *Rutherford*, 943 F. Supp. at 791 (W.D. Ky. 1996). Custom Assembly removed the case to this Court based on diversity jurisdiction. Further, Custom Assembly is "an Ohio corporation with its principal office in Haviland, Ohio." DN 1-1 at ¶ 3. Venue would, therefore, be proper in the Northern District of Ohio under § 1391(b)(1). Fine Tune could have brought an identical action based on diversity jurisdiction in the Northern District of Ohio. Therefore, Custom Assembly has satisfied the first element.

The second element the Court must analyze is whether the interests of justice make the requested transfer appropriate. *Reese*, 574 F.3d at 320. Custom Assembly argues that the nine factors articulated by the Six Circuit favor transfer. The Court will address each factor in turn.

### i.    Convenience of Witnesses

Custom Assembly contends that all its witnesses in this case—including its own employees, witnesses from third-party laundry service vendors, and witnesses from other third-party vendors—are located in the Northern District of Ohio. DN 5 at 6. In contrast, Fine Tune presents no evidence that any of its witnesses are currently located in the Western District of Kentucky. Instead, Fine Tune argues that it has employees across the country that worked on Custom Assembly's account and, therefore, transferring the case to the Northern District of Ohio would merely shift the burden of litigation from Custom Assembly to Fine Tune. DN 12 at 11. Fine Tune's argument is without merit. Fine tune has not provided the Court with any evidence that it intends to rely on any witnesses that are in the Western District of Kentucky. Accordingly, this factor favors Custom Assembly.

### ii.    Location of Relevant Documents and Relative Ease of Access to Sources of Proof

Custom Assembly contends that all of its relevant documents including records and payments for industrial laundering services are located in the Northern District of Ohio. DN 5 at 6. Fine Tune does not contend that any of its relevant documents are located in the Western District of Kentucky. Instead, Fine Tune argues that the advances in digital discovery render this factor irrelevant. DN 12 at 11–12. While this argument is potentially true, it fails to demonstrate why this factor favors the case remaining in the Western District of Kentucky. Indeed, Fine Tune has provided the Court with no evidence that any relevant documents or sources of proof are in the Western District of Kentucky. Accordingly, this factor favors Custom Assembly.

### iii.   Convenience of the Parties

Custom Assembly contends that this factor favors neither party. DN 5 at 6. Fine Tune also contends that it is "an Indiana corporation…with its principal place of business in Illinois" and therefore transferring the case would merely shift the burden of litigation. DN 12 at 11. While Fine Tune alleges that it conducts business in the Western District of Kentucky, it has provided no evidence as to why it would be more convenient to litigate this case in the Western District of Kentucky compared to the Northern District of Ohio. In contrast, Custom Assembly is an Ohio corporation with its principal place of business in the Northern District of Ohio, thereby making the Northern District of Ohio a more convenient forum. DN 5 at 6–7. Without any evidence that litigating in the Western District of Kentucky would convenience Fine Tune, this factor favors Custom Assembly.

### iv.   Locus of Operative Facts

Custom Assembly contends that the events that give rise to all of Fine Tune's claims, "contract formation, contract performance, laundry services, the accounting of Custom Assembly's records and payments for industrial laundering services, and the specific performance under the contract," occurred or must occur in the Northern District of Ohio. DN 5 at 7. Fine Tune contends, in general and conclusory fashion, that "communications and services" related to the contract were generated out of the Western District of Kentucky. The core of Fine Tune's claims, that Custom Assembly used its cost savings data to negotiate a more advantageous laundry services contract, must have allegedly taken place in the Northern District of Ohio. Fine Tune does not provide the Court with any indicia that the operative facts of this case occurred in the Western District of Kentucky. Indeed, Fine Tune concedes that employees located in Indiana and Minnesota worked on Custom Assembly's account; it does not contend that any employees located in the

Western District of Kentucky worked on the account. DN 12 at 11. Accordingly, this factor favors Custom Assembly.

### v. Availability of Process to Compel the Attendance of Unwilling Witnesses

As discussed in the first factor, Custom Assembly contends that the only relevant, potentially unwilling, witnesses in this case are located in the Northern District of Ohio. DN 5 at 7. Specifically, Custom Assembly argues that its industrial laundry services vendors are all located in the Northern District of Ohio and that court would have the "ability to compel unwilling third-party Ohio witnesses to testify at trial." *Id.* Fine Tune, in contrast, provides no evidence that any relevant third-party witnesses are located in the Western District of Kentucky. Accordingly, this factor favors Custom Assembly.

### vi. Relative Means of the Parties

Custom Assembly concedes that this is a case between two corporate entities and, therefore, this factor does not favor either party. DN 5 at 8.

### vii. Forum's Familiarity with the Governing Law

Custom Assembly contends that the parties executed the Mutual Agreement in Ohio and it is governed by Ohio law. DN 5 at 8. Fine Tune does not contest this point and provides no evidence that this Court has a particular interest in litigating the matter. The Northern District of Ohio is better suited to apply Ohio contract law to this case and has a strong interest in "the protection of its corporate residents in the area of commercial transactions." *Id.* Accordingly, this factor favors Custom Assembly.

### viii. Plaintiff's Choice of Forum

Fine Tune originally filed this suit in the Jefferson County Circuit Court "pursuant to the sixth clause contained in the [Mutual] Agreement." DN 12 at 2. Fine Tune chose Kentucky as its

9

forum in accordance with what, according to Fine Tune, is a voluntarily bargained for provision of the Mutual Agreement. Accordingly, this factor favors Fine Tune.

### ix.      Trial Efficiency and the Interests of Justice

Fine Tune's argument for keeping this case in the Western District of Kentucky rests entirely on clause six of the Mutual Agreement. It has presented no evidence that any of the relevant events, witnesses, or documents, occurred or are located in the Western District of Kentucky. Further, Fine Tune concedes that it is an Indiana corporation with its principal place of business in Illinois. DN 12 at 11. It is undisputed by the parties that Custom Assembly has absolutely no connection to the Western District of Kentucky. Custom Assembly neither currently operates nor plans to conduct business in the Western District. DN 5 at 7. It is clear that the Northern District of Ohio has a greater interest in the dispute compared to any other forum. While the Court respects Fine Tune's choice of forum, that factor alone is not sufficient to outweigh the overwhelming factors that favor continuing this case in the Northern District of Ohio. Accordingly, this factor favors Custom Assembly.

## V.      Conclusion

For the reasons stated herein, the Court will grant Custom Assembly's motion to transfer this case to the Northern District of Ohio. DN 4. A separate order will be entered in accordance with this opinion.

May 18, 2020

Charles R. Simpson III, Senior Judge
United States District Court